Good morning, Your Honors. Ruben DeGaglione and Monica Vega on behalf of the appellant. May it please the Court. The sole issue in this case at this time is whether there is between the parties a valid arbitration contract. There is no doubt that this is a case that involves the Federal Arbitration Act. But for the Federal Arbitration Act to apply, there has to be a valid contract pursuant to local law. And our contention is that under the facts of this case, there is no valid arbitration contract between the appellant and appellee. The facts are not even in dispute. The facts are that the plaintiff was employed by appellee. She worked for approximately a little bit more than 20 years. She was terminated and she filed this case in the District Court alleging employment discrimination. The defendant moved to dismiss and obtained a dismissal. Counsel, didn't the District Court find that based upon the facts of the case, that there was a valid acceptance of the offer to arbitrate? Yes, it did. So isn't that something we review for clear error? Yes. What happened, Your Honor, is that... Are you saying that the Court clearly erred in making that factual determination?  So you're not arguing that this is a de novo standard of review? I'm not arguing... You're not arguing that this is a de novo standard of review? No, no. I'm arguing that the Court simply erred as a matter of law. And the issue, Your Honor, is... There's a difference. I agree, Your Honor. My position is it's a clear error. The Court's position was that an offer was made and an opt-out option was given to all the AT&T employees. The plaintiff did nothing. She read the document, but she did not opt out. Because she did not opt out, then the District Court decided that she agreed to the arbitration agreement. And once you have an offer for a contract and an acceptance of that offer, you have a valid contract pursuant to Puerto Rican law. Don't you have to have something else to have a valid contract under federal law? Yes, Your Honor. You have to have all the elements for the contract for the offer to be accepted as is. And once you have all the elements of a contract in place and it is accepted, then you have a valid contract. You have a perfected contract. Don't you need one more thing? What do you mean? Well, obviously, you must have consent, object, and causa. And causa has been defined as a consideration, although no money has to be exchanged. But at least a change of position has to occur under the civil law of Puerto Rico. And here...  Excuse me, Your Honor. Is continued employment consideration? Well, it appears from the appellee's brief that they're arguing, contrary to the District Court, that the plaintiff's consideration, the appellant's consideration, was the fact that you remain working. Pursuant to the opinion and order of the District Court, the District Court understood that the mayor's silence and inaction in opting out amounts to a consent to the offer that was made. And the District Court did not mention at all causa or consideration. That is brought up in the appellee's brief. Now, in the information or the e-mails or whatever it is that she received to opt out or not, was there any consequence to her not opting out as stated in those documents? Oh, yes, Your Honor. The consequences are well spelled out. The information given satisfies. The 1912 ruling of this court as to what has to be, what's the content of an offer of arbitration in these circumstances. AT&T's offer does meet the criteria established by this court. Well, the consequence was that she was agreeing to binding arbitration. She was what? Agreeing to arbitration. Well, that's the issue. It spells that out. Whether she agreed or not, there's no question. She didn't opt out. The issue before the court is whether her silence and inaction, whether that pursuant to Puerto Rico law, constitutes an acceptance of an offer to contract. And our contention is. Well, what about, there's one more thing that happened. She had to click that she reviewed it. Yes. And even AT&T. Click. She did click that she reviewed it. And our position and AT&T's position is similar. She read the document. It doesn't mean that she agreed to it. Therefore, AT&T in its brief is saying, no, clicking read it, I read it, doesn't mean anything. Clicking I read it plus staying in her job, keeping her job, amounts to an acceptance. So it's an implied acceptance of a contract. I'm a little confused here. Was there any requirement that she agreed to it or she would be replaced in her job? No, there's no requirement whatsoever. Why do you say that staying in her job amounted to acceptance? That's what AT&T says in its brief. It's not what I'm saying. That's what you're saying also. No, no, no. I disagree with that. What the district court stated is that by not clicking, by not opting out, she accepted the offer. AT&T goes a step beyond. And AT&T states and posits by remaining in her work, she accepted the offer, which is quite different from what the district court stated expressly at page 329 of the appendix. But our position, Your Honors, is pursuant to Puerto Rican law, an offer that is not expressly accepted, an offer in which the plaintiff does not say anything, in which the plaintiff does not opt out, does not amount to an acceptance of a contract. Now, is there a rule that applies to all contracts? It applies to all contracts, absolutely all contracts. So the argument is made by your opponent to the effect that you are trying to create a special rule, Puerto Rican rule for arbitration contracts you claim is incorrect. That's incorrect. It's absolutely not what I'm claiming. What I'm claiming is that the commentators that I cited and the doctrines that I cited pursuant to civil law concepts state quite clearly that silence and not doing anything else in the face of an uninvited offer does not amount to an acceptance of a contract. But they're saying that it's silence plus staying on the job. That's what AT&T is saying. I'm saying that they're wrong, and I'm saying that that's not what even the district court stated. The district court simply dismissed this issue by saying in the offer there was an arbitration contract, an arbitration agreement, and the plaintiff did not opt out. Therefore, she accepted by simply not opting out. That's the issue before the court. Not opting out doesn't mean that she accepted the contract, and that's a basic tenet of civil law, and I believe to a large extent it's still a basic tenet of law in the U.S. common law. Just a side issue. The other side raises the fact that you've given us information, a lot of which has not been translated, officially translated. I didn't understand the last part, Your Honor. You've given us information that has not been officially translated. I still don't understand. Translated documents. No, the documents are quite clear. It's in English, and we are not claiming that she didn't understand it or it was not understandable or that it doesn't meet the requirements established by this court for that type of document. Our position is simply that the plaintiff, by not opting out, did not accept an offer to contract, and therefore there is no valid contract to arbitrate between the parties. That's our position. Thank you. May it please the Court. I am Ken Gage on behalf of AT&T. Your Honors, the facts of this case compel the result reached by the district court, and I believe compel affirmance by this court. The plaintiff conceives that she read the offer. It made clear to her, and therefore we must assume, that if she did not want to arbitrate future claims with her employer, there was one simple thing for her to do, and that was opt out. She chose not to. Thousands of people chose to opt out. It was a very simple process. And so there's only one reasonable factual conclusion to draw, and that is that she made a conscious decision not to opt out, and therefore conscious. Why was it a conscious decision not to answer? Because, Your Honor, as the court. Because it had no consequences, her not answering. It did have consequences. Well, it's different than some of the cases I've read, in which the offer of this required the employee to either answer or risk being unemployed. That is, some of the cases are like that, Your Honor, but there are many cases very similar to this. And I would point to. Many cases, but none of them from Puerto Rico. Well, Your Honor, we have. Or from federal law. Your Honor, we have, in terms of Puerto Rico law, we have trial court decisions, and I recognize they are not binding on this court, but we have a number of trial court decisions where trial courts in the commonwealth, commonwealth courts, the district court, the federal court, have applied Puerto Rico law under very similar circumstances, where an employer says we've adopted as a policy an arbitration program. If you do not want to participate, here is how you opt out. This is not. This is a little bit different, because accompanying the language that says here is the arbitration agreement, there was also language saying you don't have to do it, you're not under any pressure to do it, there are no consequences if you choose to opt out, and apparently that's true because the people who chose specifically to opt out suffered no consequences. That's correct, Your Honor. But there are several cases. The Najda case from the Ninth Circuit that we cite in our papers is a perfect example. Is it similar to the language that you used to write up this particular offer? They are similar. Najda and several of the cases we've cited, Aldrich, Tillman, DuBois, Maginot, from several circuits are situations just like this in that the employer told its employees, it's your choice. It's your choice. You don't have to agree with this. If you do not want to agree, you must opt out. And in all of those instances, the courts... But the difference is that Puerto Rico is a civil law territory. Indeed, Your Honor. And the question is, under Puerto Rico law, does that matter since all of this stuff is governed by a state law contract? Absolutely, Your Honor. In this court, the Soto v. State Industrial Products case is a perfect example. In the context of an arbitration agreement between an employer and employees, where this court... Which had consequences in that case, as I recall. It did, Your Honor. In other words, in that case, if the employee didn't answer positively, he could be fired. That's right, Your Honor. Therefore, it's slightly different than this one.  My point, though, in citing to Soto, Your Honor, is merely to say that this court looks to other jurisdictions when it does not have Supreme Court of Puerto Rico law. Soto is a perfect example. In Soto, this court looked to the decisions of several other circuits applying state law to decide what's sufficient consideration. Are there any appellate courts? Because we first looked to the courts of the jurisdiction. There are none, Your Honor. No appellates. There are none, Your Honor. Can we go to the trial courts? Just the trial court decisions that we've cited in our brief, Your Honor. In that case, we should maybe certify this point to the Supreme Court of Puerto Rico. Your Honor, no one has asked, and I don't think that that's necessary. Somebody did ask. This is the end of the appellate's brief. Pardon me? Yeah, somebody asked in this case. Yeah, they're nodding their heads, I recall. Oh, my apologies, Your Honor. I don't think it's warranted, Your Honor, for the simple fact that plaintiff is really asking for a special rule for arbitration. They say they're not, but the Commonwealth law makes clear that implied consent is well-known to Puerto Rico law and that people's actions can constitute acceptance of a contract. And we are not talking about a situation, Your Honors, where this is an arm's-length transaction with two people passing on a street. Plaintiffs spent over 18 years with AT&T. AT&T routinely communicated its policies to here. There was clearly an understanding of prior transactions between the parties, even in her complaint, Your Honors. She points to policies that the company violated. So clearly there's an ongoing relationship. In the year prior to the point this was rolled out and offered to its employees, the evidence shows that over 20 other company policies were communicated to employees in this way. This is not two people passing on a street. And the plaintiff, again... There's not two people with equal standing, either. Well, Your Honor, I would go back to the facts and ask what factual conclusions can we draw from her admission that she read this. It clearly says, if you don't want to participate, opt out. She admittedly did not opt out. From that, the court properly drew the conclusion that she agreed to this. And we believe that there is not clear error in that decision, because the facts support it. We believe that this court has looked to other courts of appeals and other jurisdictions, not civil law jurisdictions. Again, in Soto, this court looked to a number of other court of appeals decisions, applying other states' laws, to decide whether continued employment was sufficient consideration and found that it was. To decide whether mutuality of obligation was sufficient consideration. And in Soto, this court found that it was. It looked to those other jurisdictions. We are not here asking this court to adopt an unusual rule. We're not asking this court to adopt some rule that hasn't been applied elsewhere. This has been applied by multiple jurisdictions, as we've shown in our papers. This particular AT&T agreement has been applied and enforced by several states. The state of California, applying California law. Courts applying New Mexico law. Courts applying Missouri law. Courts applying Indiana law. Courts applying New York law. Courts applying Texas law. I can go on. These are in our brief. And as the NAJDA court said, the Ninth Circuit said, and again, it is applying California law and not the law of the Commonwealth of Puerto Rico. But the court there said the import of silence in the face of an easy path of opting out, and this is a quote, was as apparent as if he signed his consent. It's a factual conclusion. And that is what we believe the district court concluded here. Was there an opt-out button? There was a link. Yeah, a link. A button, a link. There was a link, Your Honor, that the employee had to click. It would have taken them to another page. And as the record shows, thousands of people opted out. Because she didn't opt out, we didn't go into the record, put into the record what was required, but it was literally required, Your Honors, a couple of pieces of information, the person's name and the employee ID. Thousands of people opted out, and many did not. And many, many courts have enforced this agreement because of the factual conclusion that if someone read this, it clearly and unequivocally explained to them that this is a policy, this is a program that the company has going forward to resolve disputes between employer and the employees. And it is a mutual obligation. And, therefore, after that opt-out deadline expired, AT&T certainly understood that any claims it would have against her would be arbitrated. And, therefore, any claims that she would have against the company should also be arbitrated. Do you know whether any states have passed remedial legislation to require sort of affirmative opt-in like they have done with the negative option contracts in the consumer field? I'm not aware of any that have specifically adopted that, Judge Howard, but there are several states that have adopted peculiar rules for employment situations relating to arbitration or employment disputes. Those, if they are applied to a contract that is governed by the FAA, are preempted, according to the Supreme Court's long list of cases, finding FAA preemption for rules that disfavor arbitration. So, yes, there are many states that have adopted those, but those laws, in fact, the state of New York has recently adopted one relating to sexual harassment claims. And it carves out. It does not apply to those that are governed by the FAA, and this one is governed by the FAA. Thank you, Myron. Thank you both. We will take a brief, let's say, five-minute recess before we move to the next case.